We'll hear the next case, United States v. Healy, John. Good morning. May it please the court. My name is Harry Sandick. I'm a partner at Patterson, Belknap, Webb & Tyler. And pursuant to an appointment under the Criminal Justice Act, I represent Mr. Alijia in this appeal. This appeal presents a principal question of whether his sentence can be affirmed when the record strongly suggests that the district court relied on an outdated version of Section 3B1.2, the mitigating role adjustment section of the guidelines. Alijia was a drug courier. He cooperated with the government upon his arrest. The probation report never specifically refers to the amended provision. Its analysis gives no hint that it was. It refers to the 2015 version, including all amendments. It refers to that when it states what guidelines Book had used. But in its analysis, it mentions only two factors. It says he was. Do you think that it says we're going to rely on this one, but in fact it relied on an earlier version? Well, I think based on the fact that it doesn't address any of the factors that are laid out in the amended guideline, that it doesn't, you know, grapple with those in any way, I think suggests that it is possible that the probation office was not fully familiar with the amendment of the guideline. We've seen both in Siborski and this circuit and in cases across the country where there has been some, I guess, slowness to recognize that the old way of doing business under 3B1.2 was meant to be upset by the commission. The commission said the guideline is proposed too sparingly, and they specifically talked about drug courier cases like this one. The government's brief cites we also submit to the wrong version of the provision. It quoted outdated language about the average participant. It also never made reference to the five factors. We're on plain error review? We are on plain error review, as was in Siborski. Was it clear or obvious that the district court was using the wrong guidelines? I think that it is clear from the record. The district court says nothing at all. You're pretty careful so far saying the record suggests. Well, let me try to be more clear. The district court never says anything about why it denies the minor role. The record is completely silent. So then in an effort, and the government argues plain error. I should say we've argued in our brief it isn't. But taking plain error as the standard, you're then left to look at what the district court had before it when it's made the decision. So you have the pre-sentence report, which doesn't do the analysis under the new version of 3B1.2, and you have the government's brief, which for at least three reasons appears to be talking about the old version of 3B1.2. And it's understandable why that would be the case. This had been the rule in this circuit and in the southern district for many years, but it has changed now. And there's no indication in the record that anyone at the government or probation or the court took notice of the way in which it had changed. And in fact, the government specifically says to the district court, deny the role reduction because the defendant played an integral role in the offense. That integral role analysis is one of the things that the amendment here, Amendment 794, specifically says should not be a guiding consideration in deciding whether to find a minor role. So although Siborski, we recognize it's a summary order, it's not binding, we think the analysis of that panel of this court is persuasive and relevant here. As in Siborski, my client was sentenced within one year of the amendment's passage. As in Siborski, the district court did not recite the factors. Yeah. What factor in the amended guideline did the district court fail to consider? Sure. The district court, when it was doing its guidelines analysis, does not consider whether the defendant was planning or organizing the activity. The absence of that fact mitigates in favor of a role reduction. That he exercised no decision making. That he had no discretion in performing his criminal acts. And significantly, that he had no proprietary interest. He was being paid, the evidence shows, as a courier, as a mule. He did not have a piece of the action, so to speak. Those are four of the five factors in 3B1.2. I mean, I'm looking at the summary in the government's brief at page 18. And it says that the defendant argued that he had no decision making responsibility. That he was merely a functionary who had made no choices. Those sound like they are covered by the amendment. So the defense counsel did make arguments that sounded in terms of the factors. But because the district court is silent as to its basis for denying it. And because the government put before the district court outdated provisions. And an incorrect reliance on the question of whether the defendant played an integral role in the offense. Which is not supposed to be a guiding consideration after the amendment. It does appear from this record, as in Suborski, that the district court was not considering the new guideline. In Suborski, the panel actually concluded there that the district court correctly utilized the November 2015 guideline. But was concerned that even a judge familiar with that guideline wouldn't be aware of the sentencing commission's statement of reasons. Which it found relevant to the analysis of 3B1.2. That same type of analysis is applicable here. In particular, the discussion in the separately bound volume, which the Suborski panel said would not have been necessarily looked at by the district court. Specifically talks about the question of whether a defendant played an integral role. For many years, that was considered an important factor sufficient to deny a role reduction. The amendment states, amendment 794 states that they've revised the commentary to emphasize that this should not be a significant factor. And that a defendant who performs an essential role should still be eligible if they otherwise qualify for a mitigating role reduction. So similar to Suborski, similar to the Ninth Circuit in Diaz, the Fourth Circuit in Carbajal, the Cruikshank decision from out of circuit as well. This case is in that trend where in the short period of time after the amendment of the mitigating role reduction, where there is some ambiguity, substantial doubt, to use the language of Suborski, that the right guideline provision was applied, the court should remand to give him an opportunity, my client an opportunity, to make the arguments and have the district court make a finding. He may well conclude that this role reduction was properly denied. We don't know. But there should be a fair fight, so to speak, on 3B1.2. We also make a substantive reasonableness argument that I'm happy to rely on our brief unless the court has questions. We'll hear from the government. May it please the court. My name is Andrew Beatty. I'm an AUSA in the Southern District of New York. I represent the government on this appeal and also represented it in the district court below. The defendant had a fair trial after which Judge Daniels sentenced him to a below guideline sentence of 86 months imprisonment. That sentence was both procedurally and substantively reasonable, and nothing in the record shows that it was based on the incorrect version of the guidelines. The district court did not err, let alone plainly err, when it declined to give Mr. Alijia a mitigating role reduction. Now, Mr. Alijia got 86 months, as you just pointed out. Yes, Your Honor. What did his co-conspirator get? His co-conspirator got 18 months. Isn't that a fantastic difference? It is some difference, yes, Your Honor. Judge Daniels — A year and a half to over 7 years? At the sentencing proceeding, Judge Daniels discussed that difference in sentence extensively. One of the reasons was that the co-conspirator, Mr. Kumankuma, had pled guilty. He got acceptance of responsibility points. He also got reduction in his guidelines for participating in a safety valve proffer. Judge Daniels also acknowledged the difference in age, and ultimately Judge Daniels was well within his discretion to give the two defendants sentences that differed by that much. Is there an ambiguity as to whether Judge Daniels decided the 3B.2 issue? Isn't that — if there is an ambiguity, it really isn't there an ambiguity. Isn't that enough for us to remand in view of Siborski? No, Your Honor. I don't believe that's necessary here, because the record here, viewed as a whole, does not show any confusion. The record suggests that every participant in the sentencing was aware of and was relying on the correct version of the guidelines. So, as Judge Chin noted, the PSR on its face relies on the correct version of the guidelines, and that's different than Siborski, which relied on the incorrect version, the previous version. The defense submission, as the defendant acknowledges here, discussed the new amended guidelines, compared the defendant to co-conspirators only rather than to the average participant, and emphasized correctly that a necessary or integral role did not preclude a minor role adjustment. And there's no indication at the sentencing itself that the district court considered any factors that were inconsistent. I'm concerned a little bit about the fact that you have an effective mule, albeit the deals can't go forward without — I mean, it's integral that the drugs get imported into the country, but the person is not given a piece of the action. The person is just given — is paid a commission, or paid a fee for this, and that that role is considered the same as the true importer, the person who's making the deal, or the person who's exporting the deal from the foreign country. Is that — is that — I mean, tell me about that under the current guideline. Why — is that just a matter of discretion within the district court? It is, Your Honor. The district court considered, on the record at sentencing, Mr. Alijia's involvement and his role compared to both Mr. Kumankuma, his co-conspirator here in the United States, as well as the co-conspirator in Ghana, who was the one ultimately shipping the heroin to the United States. He considered the amount that Mr. Alijia was being paid over the few times that he had done this. This was the third time, and he had increased the number of — he had increased his compensation from $3,000 the first time to $10,000. And the trial record shows that that's about a sixth of the entire value of that kilogram of heroin. That is a substantial portion that Mr. Alijia was being paid. It is not consistent with the standard amount that a courier is paid. There's — now, it's true, as the court noticed, that no one at the sentencing, including the court, quoted from the new commentary, the amended commentary. But the defense is seeking to turn that silence into ambiguity. And the general rule is that sentencing judges are not required to recite robotic incantations to prove that they considered any particular factor at sentencing. The defendant is asking this Court to make an exception to that general rule. And there's no basis for that. We have to mention 3553A, don't we, every time? Your Honor, if the court — the sentencing court is, of course, required — Don't we have to mention the fact that we considered the guidelines and that they're not binding, but that we've considered them? So there are things we have to mention. The sentencing court is required to consider a whole host of factors. But if the sentencing court does not read through each of the factors in 3553A, this Court has regularly held that that is not a — that is not reversible error. Doesn't the district judge at the time of sentence have to acknowledge that he considered the 3553A factors? Those are all factors that the sentencing judge does have to consider, yes, Your Honor. But he doesn't have to read each one. I didn't ask you that. And if he doesn't consider one, or if the record doesn't reflect that, that's not a reason for remand. And this Court has regularly held that any particular factor — there's no requirement for these robotic incantations. The defense argument here offers no limiting principle. It would essentially require any time the guidelines were amended or that there's commentary, it would seem to require that the PSR and the sentencing court expressly say that they relied on this new amendment. And how long does that go on for? At this point, unlike in Siborski, the amendment had been in effect for approximately a year before Mr. Elijah's sentencing. What was the timing in Siborski? Well, in Siborski, the PSR had already been drafted under the old guidelines. Right. And then between the time of the PSR and the sentencing, the new guidelines came out. Here, the amendment became effective in November of 2015. The defendant wasn't sentenced until August of 2016. So all of the relevant documents, including the PSR, had in front of them the — PSR was prepared after the amendment. Exactly, unlike in Siborski. And, again, another distinction from Siborski here is that there's no — there were no considerations that were inconsistent with the new commentary. Now, in Siborski, the sentencing court had focused on the average participant. Now, Amendment 794 had as one of its primary motivations to clarify a circuit split about whether the court should consider the average participant or the average participant in the criminal activity. We don't have any — so that was — the court had expressly relied on things that were inconsistent with the new guidelines. Here, there's nothing the court considered that was a precluded factor. The idea of the integral role, that's not a precluded factor. The guidelines make clear that it can't be dispositive. But all of the courts, including Sanchez-Villarreal, out of the Fifth Circuit that the defense relies on, makes clear that a sentencing court — it's completely proper for it to consider that as a factor. What was the final guideline range here that was arrived at? It was 96 to — excuse me one moment. The bottom of the range was 96? That's right, Your Honor. And the sentence was what, 84, was it? 86 months, Your Honor. 86. I'm sorry, 97 to 121 was the guideline. 97 to 121. And unless the court has any further questions, I will rely on my brief. Thank you. We'll hear the rebuttal. Thank you. Thank you, Your Honor. First, with respect to Siborski, the — this court concluded that the district court in Siborski actually did consider the new 3B1.2, but still remanded out of concern that the district court didn't fully consider all of the implications based on the guideline's commentary. The Siborski sentencing was 10 months after the new guideline was put into effect, whereas here it — They relied on the — in fact, relied on the old guideline, though, right? Right. But the district court, which was imposing sentence, this court concluded relied on the post-amendment guideline. And nonetheless, the case was still remanded because of substantial doubt that the district court fully appreciated the impact of it. There was colloquy in Siborski about the meaning of 3B1.2 and how to apply it. Here, there was no consideration on the record by the district court at all, the same as in the Ninth Circuit's decision in Diaz, where the district court was — I'm sorry, where the Ninth Circuit remanded the case based on similar factors to what we have here. On the subject of substantive reasonableness, we do argue that this sentence was overly long for someone in his position. He cooperated promptly upon his arrest. His cooperation led to Kumang Kama's arrest. For reasons that I don't know, I wasn't trial counsel, his cooperation didn't mature into a cooperation agreement in a 5K letter. But he certainly did much more to help the government than the ordinary trial defendant does. His trial itself is virtually a slow-moving guilty plea. He wanted to contest the idea that he did this freely as opposed to under some duress, and so they had a two- or three-day trial. Had the minor role been granted, his sentence would have been — sentencing range would have been 78 to 97 months. So the low end of that range is below what he received. There was a question about Kumang Kama's guidelines range. It was 50 — What he received was within the guideline range that you basically say he should have received. It would have been, but given that the district court felt that a substantial reduction from the guidelines range was appropriate of 11 months or so, there's no reason to think that if the guidelines range had changed, the sentence would have been the same. And in Molina-Martinez, the Supreme Court says that in the ordinary case, a defendant satisfies his burden to show prejudice just by pointing to the application of an incorrect higher guidelines range, even if the ultimate sentence would have been within that range. Finally, the distinction between Siborski, that in Siborski, there was sort of a real inconsistency between what the district court did and what the amendment said, but there wasn't that here, just misses the fact that the government's own brief focuses the court's attention on the significance of whether the defendant played an integral role, which is not supposed to play a significant part in the analysis. Given that there is substantial doubt here, as there was in Siborski, we think the court should remand. Thank you. We'll reserve decision.